UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRAD H. DUNLAP, JR., )
 )
    Plaintiff, )
 )
 )
v. ) Case No. 3:10-CV-136
 ) (PHILLIPS/GUYTON)
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    Defendant. )


## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 and 23]. Plaintiff Brad H. Dunlap, Jr., seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On August 14, 2006, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began Augusst 4, 2005. [Tr. 21].[1]  After his application was denied initially and also denied upon

---

[1]The Plaintiff filed for Social Security disability benefits in November 1996; the claim was denied on January 7, 1997. The Plaintiff again filed for benefits, and this claim was denied on June 11, 2004. [Tr. 156].

reconsideration, the Plaintiff requested a hearing. On October 31, 2007, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 771- 84]. On January 16, 2008, the ALJ found that the Plaintiff was not disabled. [Tr. 30]. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.      ALJ FINDINGS**

>  The ALJ made the following findings:
>
>  1. The claimant has not engaged in substantial gainful activity since August 14, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
>  2. The claimant has the following severe combination of impairments: back disorder; hypertension; headaches; obstructive sleep apnea; gastroesophageal reflux disease (GERD); history of nose bleeds; borderline intellectual functioning, and depression (20 CFR 416.920(c)).
>
>  3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
>  4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except he can understand and remember detailed tasks with some, but not substantial difficulty, and he cannot perform complex tasks; he can concentrate and attend to the same tasks, despite some difficulty; he can interact with coworkers and supervisors without significant limitations; he can relate with the general public despite some difficulty, but difficulty does not substantially impact his ability to relate with the general public; adapt to work like settings and changes with some, but not substantial difficulty, and will experience some, but no substantial difficulty in setting goals or making plans independently.

> 5. The claimant is capable of performing past relevant work as a merchandise deliverer; weighs produce, and laundry laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since August 14, 2006 (20 CFR 416.920(f)), the date the application was filed.

[Tr. 23-30].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d

4

270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. MEDICAL EVIDENCE

In a questionnaire completed September 7, 2006, the Plaintiff alleged that his back pain began when he was just 17 years old, or in 1991. [Tr. 148]. In a pain questionnaire completed by the Plaintiff with the help of his wife in 2003, however, the Plaintiff reported that he had no pain at all. The ALJ's decision in this case addresses a period of disability alleged to have begun, on August 4, 2005, which the Plaintiff describes as the date "when my back got worse." [Tr. 774].

Eric M. Redmon, M.D., is the Plaintiff's primary care physician. In January 2006, Dr. Redmon ordered an x-ray scan of the lumbar spine, which revealed no abnormalities. [Tr. 539]. In April 2006, Dr. Redmon ordered an MRI of the lumbar spine showed normal alignment, and only a right-sided disc bulge at L5-S1 that did "not appear to significantly compromise the central canal or the neural foramina." [Tr. 537]. The rest of the MRI showed normal, *i.e.* "unremarkable," results. [Tr. 537]. In June and July 2006, Dr. Redmon administered a series of epidural steroid injections.

[Tr. 524-526]. At the end of July, he informed a nurse practitioner, working under the supervision of Dr. Redmon, that the injections had helped his pain, and he rated his back pain at 4 or 5 at its maximum. [Tr. 529].

On September 28, 2006, Eva Misra, M.D., reviewed Plaintiff's records and assessed his physical residual functional capacity ("RFC") for the state Disability Determination Service ("DDS"). [Tr. 476-483]. Dr. Misra concluded Plaintiff: could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour work day; sit about 6 hours; and would have no limitations in pushing or pulling. [Tr. 477]. Dr. Misra determined the Plaintiff would be able to frequently climb, balance, stoop, kneel, crouch, and crawl. [Tr. 478]. Dr. Misra did not recommend any manipulative, visual, communicative, or environmental limitations. [Tr. 477-479]. Dr. Misra opined that the Plaintiff's allegations of pain were only partially credible given "essentially normal" physical examination findings. [Tr. 477]. Because of radiographic findings of mild disc bulging and an annular tear and partially credible pain allegations, Dr. Misra stated that she reduced the RFC to medium work. [Tr. 478-79].

Dr. Redmon ordered electrodiagnostic testing on October 16, 2006 which showed L5 and S1 root innervation. [Tr. 254]. The study cautioned that "specific root involvement should be clinically corroborated" due to potential error. [Tr. 255]. The testing revealed a tibial nerve A-wave, which was described as an abnormal but non-localizing finding that demonstrated either S1 radiculopathy or a possible tibial or sciatic nerve lesion. [Tr. 256]. Aside from the A-wave, lower extremity sensory and motor findings were normal [Tr. 466].

A CT scan of the lumbar spine performed on October 16, 2066 was described as "essentially normal," by the radiologist John M. Royer, M.D. [Tr. 463]. Dr. Royer reported to Dr. Redmon, the

7

referring physician, that no significant disc space narrowing was visible. Dr. Royer found only "minimal central annular bulging at L4-5 [and][n]o lateral nerve root compression or paraspinal masses" [Tr. 463].

On October 25, 2006, Plaintiff reported to a nurse practitioner, working under the supervision of Dr. Redmon, that he had pain relief from his last epidural steroid injection. [Tr. 452]. The Plaintiff reported that his pain returned about two weeks later, but it was tolerable. [Tr. 452]. He stated that a month prior to his visit, though, the pain had returned. Plaintiff's gait was normal, and he scheduled a follow-up appointment for late November. [Tr. 452].

In November 2006, Plaintiff saw Dr. Redmond after having increased back pain. [Tr. 450]. The Plaintiff denied experiencing any lower extremity weakness or loss of sensation, though he reported he had several episodes of his legs suddenly giving way. [Tr. 450]. Dr. Redmon wrote that Plaintiff "had done well after his last epidural series with no complication with a 30 to 40% decrease in his axial pain and almost complete resolution of his radicular symptoms." [Tr. 450]. Dr. Redmon observed that the recent CT scan had "revelaed no new adnormalities." [Tr. 450].

A back exam revealed moderate tenderness to palpation of bilateral lower lumbar paraspinal muscles, but no midline tenderness. [Tr. 450]. Strength, sensation and deep tendon reflexes were intact and normal, and straight leg raising tests were negative bilaterally. [Tr. 450]. Dr. Redmon recommended another series of epidural steroid injections, and he performed the first injection at that visit. [Tr. 450].

On December 4, 2006, an MRI of the spine the same month confirmed only a mild disc bulge and annular tear, as well as generalized degenerative disc disease. [Tr. 460].

On December 18, 2006, Dr. Redmon administered epidural steroid injections and reported

decreased back pain and lower extremity symptoms. [Tr. 266]. However, upon getting into the shower a few days later, he experienced significant pain in his lower left back. [Tr. 266]. On December 22, 2006, a trigger point injection was administered and relieved the pain. [Tr. 266]. A CT scan of the lumber spine revealed only mild disc bulging at L4-5, unchanged since the previous exam, and "very early mild degenerative changes of the facet joints of the lumbar spine." [Tr. 457]. Dr. James K. Cox, M.D., the radiologist, found no fractures, lesions, spinal stenosis, or foraminal stenosis. [Tr. 457].

In January 2007, Plaintiff reported that his radicular symptoms had improved with an epidural injection series, and Dr. Redmon noted that the Plaintiff was able to make a trip during the holiday season without difficulty. [Tr. 289]. On February 9, 2007, Plaintiff reported to Dr. Redmon that he had a 50% reduction in pain after a facet injection. [Tr. 285]. Examination revealed only moderate tenderness in his lower lumbar paraspinal muscles upon palpitation [Tr. 285]. On February 26, 2007, he reported that he was no longer receiving any pain relief from facet injections, and Dr. Redmon agreed to refer him to a neurosurgeon for evaluation. [Tr. 283]. The reported intermittent bouts of radicular pains, but no problem with bowel or bladder incontinence, lower extremity weakness or loss of sensation [Tr. 283]. The Plaintiff continued seeing Dr. Redmon monthly from March through June 2007. [Tr. 260-265].

On March 28, 2007, Marvin H. Cohn, M.D., reviewed Plaintiff's records for the state DDS and assessed his physical RFC. [Tr. 439-446]. Dr. Cohn concluded Plaintiff: could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour work day; sit approximately 6 hours in an 8-hour day; and would have no limitations in pushing or pulling. [Tr. 440]. Dr. Cohn determined Plaintiff would be able to frequently climb, balance, stoop, kneel,

9

crouch, and crawl. [Tr. 441]. He did not recommend any manipulative, visual, communicative, or environmental limitations. [Tr. 442].

Dr. Cohn opined that the Plaintiff's allegations of back pain were only "partially credible," noting that he was able to perform a host of tests without back or leg complaints [Tr. 444]. Dr. Cohn specifically referred to the fact that Plaintiff had no focal neurological findings, a negative straight leg raise test, and no weakness in a 2006 physical exam. [Tr. 446]. He also wrote that the MRI completed in December 2006 and CT scan showed only degenerative disc changes and a mild disc bulge with annular tear at L5-S1. [Tr. 446]. Dr. Cohn noted that the left tibial nerve A-wave changes could be found in normal individuals. [Tr. 446]. Dr. Cohn noted that a physical exam in November 2006 was unremarkable, with the same conservative treatment recommendations as before [Tr. 446].

On May 21, 2007, Dr. Redmon wrote on a prescription pad: "To Whom It May Concern: In my medical opinion, Mr. Dunlap has severe low back pain and due to his pain is unable to work." [Tr. 433]. In July 2007, a steroid injection was administered to Plaintiff's left lower back. [Tr. 277].

On November 2, 2007, Dr. Redmon wrote that Plaintiff's low back pain and bilateral radicular symptoms were confirmed by objective measurement, and that Plaintiff's severe pain was consistent with his clinical observations. [Tr. 254]. He specifically pointed to electrodiagnostic results from October 16, 2006 which showed L5 and S1 root innervation. [Tr. 254, 255]. Additionally, he wrote that abnormal Tibial A-waves demonstrated S1 radiculopathy. [Tr. 254, 256]. The doctor also commented that a December 4, 2006 MRI of the lumbar spine showed L5-S1 disc desiccation, mild disc space height loss, moderate spondylosis, and mild right paracentral disc bulge with an annular tear. [Tr. 254, 257]. Dr. Redmon detailed the pain management procedures Plaintiff

10

tried, including steroid injection, facet injection, and trigger point injection, that all failed to produce lasting pain relief. [Tr. 254].

Dr. Redmon concluded by explaining, "Mr. Dunlap has a medical condition, confirmed by objective measurement of nerve function, that would reasonably be expected to produce severe pain. Mr. Dunlap's severe pain has also been consistent with clinical observations over an extended period of time." [Tr. 254].

## V.  POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ committed error by failing to apply the Treating Physician Rule. The Plaintiff argues that the ALJ did not provide sufficiently specific reasons for discounting Dr. Redmon's opinions. [Doc. 12 at 4]. The Plaintiff directs the Court to a number of Dr. Redmon's notes and findings, which he contends the ALJ failed to and should have addressed in his decision. [Doc. 12 at 5-7].

The Commissioner responds that the ALJ cited all of the notes and findings that the Plaintiff cites in his brief. [Doc. 23 at 11]. The Commissioner maintains that the ALJ evaluated these portions of the record, but ultimately discarded Dr. Redmon's conclusory statement that the Plaintiff was unable to work due to back pain. [Doc. 23 at 10-11].

## VI.  ANALYSIS

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the Commissioner does not dispute that a treatment relationship existed between the Plaintiff and Dr. Redmon and that Dr. Redmon was the Plaintiff's treating physician. Thus, the only issues before the Court are the weight afforded to Dr. Redmon's findings and opinions and the explanation of the weight afforded.

In his decision, the ALJ discussed Dr. Redmon's treatment notes and findings, as follows:

> The record shows multiple office visits where the claimant complains of lumbar back pain with bilateral lower leg radiation with occasional leg give way. Physical examination in January 2006 shows only degenerative disc changes multilevel and mild disc bulge at L5-S1. In April 2006, follow up revealed no spasms, and gait within normal limits with negative straight leg raise at 60 degrees bilaterally with lower extremity sensation intact. Additional diagnostic studies such as EMG and NCS testing in October 2006 showed only left tibial nerve A-wave changes that were non-localized and normal. The claimant improved regarding pain for several months following a series of injections, but in mid-2006 pain returned. A CT scan in October 2006 of the lumbar spine was performed due to complaints

> of back pain with right leg numbness; but the impression was essentially a normal CT of the lumbar spine with no fractures, destructive lesions, or acute findings. He has been referred for no aggressive pain management treatment. Repeat lumbar MRI in December 2006 showed no new changes or in examination with straight leg raising test, sensation testing, motor testing, and activity testing was unremarkable. No change in treatment regimen was noted.
>
> . . . .
>
> Progress notes from Dr. Redmon in January 2007 shows that the claimant was able to make a trip around the holidays without difficulty regarding his chronic back pain. The claimant reported his back pain 7 out of 10 without medications, but the pain was tolerable with his current narcotic dosing and epidural injections.

[Tr. 28].

The ALJ did not state that he was discounting this long course of treatment or Dr. Redmon's observations and examination findings. To the contrary, it appears the ALJ fully credited this treatment history and these objective treatment notes. The ALJ, instead, discounted Dr. Redmon's opinion that the Plaintiff was disabled, *i.e.* his opinion that the Plaintiff was "unable to work." In regards to Dr. Redmon's disability opinion, the ALJ explained:

> The record does not contain any function-by-function assessments from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. Dr. Redmon gave an opinion that the claimant is 'disabled,' which that issue of disability is one reserved to the Commissioner.

[Tr. 29].

Based upon a reading of the ALJ's decision as a whole, the Court finds that the ALJ discounted only Dr. Redmon's opinion that the Plaintiff was disabled as contained in his statement: "To Whom It May Concern: In my medical opinion, Mr. Dunlap has severe low back pain and due to his pain is unable to work." [Tr. 433]. The ALJ discussed Dr. Redmon's treatment history with

13

the Plaintiff at length, and specifically stated that he "considered the claimant's complaints of pain." [Tr. 28]. The ALJ correctly noted, however, that Dr. Redmon's statement that the Plaintiff could no longer work invaded the Commissioner's exclusive role in determining disability. See Warner v. Comm. of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quoting Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician."); see also Soc. Sec. Ruling 96-5.

The Court finds that the ALJ's decision to discount Dr. Redmon's opinion is supported by substantial evidence because the single-sentence assertion was not supported by the relevant evidence including the physical examination notes, was not consistent with the record as a whole including the Plaintiff's own reports of his ability and the reviewing physicians' opinions, and it did not include specific findings as to impairments that would diminish the Plaintiff's capacity for work. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Moreover, the ALJ is not required to credit such a conclusory opinion, see White v. Comm. of Soc. Sec., 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."), especially where such opinions trespass upon the ultimate disability determination, see King, 742 F.2d at 973.

In the alternative, even if the Court construes the ALJ's opinion as discounting Dr. Redmon's findings and observations, in addition to discounting his opinion as to disability. The Court finds that the ALJ discussed the findings and observations as required by applicable statutory regulations. The Plaintiff directs the Court to certain records which he contends were not properly discussed. These include: facet injections performed on January 18, 2007; treatment notes dated February 26, 2007; the multiple epidural and facet injections performed by Dr. Redmon; extensive pain medications prescribed by Dr. Redmon; and the abnormal A-wave changes. [Doc. 12 at 5-7].

14

First, the Court notes that, contrary to the Plaintiff's position, the ALJ is not required to discuss every piece of evidence in the record. See Kornecky v. Comm. of Soc. Sec., 167 Fed. App'x 496, 508 (6th Cir. 2006) (quoting Loral Defense Systems-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir.1999)) ("[An] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.")

Notwithstanding, the Court finds that the ALJ addressed the majority of the findings and treatment notes cited by the Plaintiff. See Tr. 28, ¶ 3 at sentence 2 (noting injections performed on January 18, 2007); Tr. 28, ¶ 1 at sentence 5 and ¶ 3 at sentence 2 (addressing the epidural and facet injections performed by Dr. Redmon); Tr. 28, ¶ 3 at sentence 2 (discussing pain medications prescribed by Dr. Redmon); and Tr. 28, ¶ 1 at sentence 6 (describing the "essentially normal" CT Scan which showed no fractures or destructive lesions, but did have the abnormal A-wave changes).

Further, the Court has reviewed the portions of the record cited by the Plaintiff, but not specifically mentioned by the ALJ [see Tr. 283]. The Court finds these treatment notes are consistent with the ALJ's discussion of Dr. Redmon's treatment of the Plaintiff and the ALJ's ultimate decision. The fact that the ALJ did not specifically mention them does not support a conclusion that he was unaware of these notes, and moreover, the observations contained therein do not undermine the ALJ's decision.

Accordingly, even under this alternative analysis, the Court finds that the ALJ's decision was supported by substantial evidence. Thus, the Court finds that the Plaintiff's allegation of error is not well-taken.

## VII.   CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing medium work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions, including the ALJ's conclusion that the Plaintiff is capable of performing past relevant work as a merchandise deliverer, produce weigher, and laundry laborer.  Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 22]** be **GRANTED**.

                                           Respectfully submitted,

                                             s/ H. Bruce Guyton
                                       United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).